UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CLARENCE SMART, | : | Case No. 3:12-cv-65 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; AND (2) THIS MATTER IS REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g)**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 9-19) (ALJ's decision)).

I.

Plaintiff filed applications for DIB and SSI on May 1, 2007. (Tr. 9). He alleged a disability onset date on April 1, 2006, due to back pain and neck numbness.[1] (*Id.*) His applications were denied initial and upon reconsideration. (*Id.*) Plaintiff had a hearing before an ALJ on March 11, 2010. (*Id.*) The ALJ issued her decision on May 18, 2010, finding Plaintiff not disabled as defined by the Social Security Act. (*Id.*) The Appeals

---

[1] In March 2006, Plaintiff was dancing on a bar when he fell off and hit his head causing a scalp laceration. (Tr. 11).

Council denied review, making the ALJ"s decision the final decision of the Commissioner. (*Id.*) Plaintiff then commenced this action in federal court for judicial review of the Commissioner's decision pursuant to 42 U.S.C. Section 405 (g).

Plaintiff is 50 years old (Tr. 17) and has an eleventh grade education (Tr. 147). His past relevant work consisted of auto body technician, auto body painter, and automotive service department technician. (Tr. 41).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right knee cysts, status post-discectomy and fusion at C5-6 and C6-7, degenerative disc disease lumbar spine, and status post-carpal tunnel release bilaterally (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a), with limitations: The claimant can lift no more than a maximum of 10 pounds at a time; occasionally lift and/or carry articles like docket files, ledgers, and small tools; stand/walk for a total of no more than 2 hours in a normal 8-hour workday; and sit for a total of 6 hours in a normal 8-hour workday subject to postural limitations of never climbing ladders, ropes or scaffolds,

> occasionally climbing stairs or ramps, and occasionally balance, stoop, crouch, kneel, or crawl; and manipulative limitations of occasionally reaching overhead bilaterally and frequent use of bilateral hands to handle, finger, or feel.
>
> 5. *[sic]* The claimant is unable to perform any past relevant work (20 CFR§§ 404.1565 and 416.965).
>
> 6. The claimant was born on April 29, 1962 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 §§ CFR 404.1563 and 416.963).
>
> 7. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*see*, SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2006, through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 11-18).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 19).

On appeal, Plaintiff argues that: (1) The ALJ erred in not only rejecting the opinion of his treating physician, Dr. Catanzarite, but also in not mentioning her opinion

and giving no reason for its rejection in the decision; and (2) the ALJ erred in finding that Plaintiff was not credible. The Court will address each argument in turn.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

The record reflects that:

Prior to Plaintiff's onset date, he was treated from October 5, 2004 through June 2, 2005, at the Orthopedic Institute of Dayton. Plaintiff had been rear-ended by a semi-truck on March 18, 2004. His injuries caused him to develop "right paraspinal cervical pain radiating to the right shoulder with numbness and tingling into the right arm particularly if he holds his head or arm in the wrong way." (Tr. 200). A right shoulder MRI showed a small tear. He had three injections to the right shoulder that did not help. He also had physical therapy which did not help and was taking Vicodin four times a day. (Tr. 200, 218, 220-222). On exam, he had positive right arm Spurling, diminished right triceps, and diminished reflexes on the right arm. (Tr. 200-201). An MRI showed a central disc herniation at c5-6 and a right sided disk herniation at C6-7. The impression was "[r]ight arm radiculopathy secondary to disk herniation" and surgery was recommended. (Tr. 201). On November 12, 2004, Plaintiff underwent an anterior cervical discectomy and fusion at C5-6 and C6-7 with plating and allograft. (Tr. 199). At two weeks, x-rays revealed a stable anterior fusion. (Tr. 198). Plaintiff was allowed back to light duty work. (Tr. 197). At six weeks, Plaintiff had pain at night in the intrascapular region. (Tr. 196). He was back to full activities by March 3, 2005, but he experienced some burning in his posterior neck. (Tr. 195). At the six months mark, he had some occasional burning in the back of his neck. (Tr. 194). A March 10, 2006 cervical spine CT scan revealed

previous fusion and spina bifida occulta of C1.  (Tr. 242).

Dr. Aivars Vitols, an orthopedic surgeon, evaluated Plaintiff on July 19, 2007, at the request of the State agency.  (Tr. 251).  Plaintiff had shoulder pain since his accident in 2003, had right knee pain since the late 1990s, and had undergone an arthroscopy in 1997, which helped his knee condition for only about a year.  He also had hypertension and chronic migraines.  (*Id.*)  On exam, Plaintiff had a slight antalgic gait, favoring his right leg; restricted range of motion of his cervical spine; moderate muscle spasms of the cervical spine; tenderness of the cervical spine; restricted range of motion of the shoulders; substantial tenderness of the first right metacarpal carpal joint; left wrist tenderness; muscle spasms of the dorsolumbar spine; painful range of motion of all planes of the lumbar spine; and positive McMurray of the right knee.  (Tr. 252-53, 256-57).  X-rays of the cervical spine revealed a previous fusion at C6-7.  The impression was post-ACDF syndrome, probable torn medial meniscus right knee; probable basilar joint arthritis of the right hand; and lumbosacral sprain and strain.  Dr. Vitols stated that "[b]ased on the foregoing clinical objective findings of this examination, the claimant's work capabilities and tasks of daily living are affected accordingly."  (Tr. 255).

The record was reviewed by Dr. Myung Cho, on August 15, 2007.  (Tr. 259-266).  Dr. Cho opined that Plaintiff could occasionally lift/carry up to twenty pounds and frequently lift/carry up to ten pounds.  He could stand/walk for six hours out of eight and sit for six hours out of eight.  (Tr. 260).  He could occasionally climb ramps and stairs but

he could never climb ladders, ropes, and scaffolds. (Tr. 261). He was limited in his ability to reach in all directions with no frequent overhead reaching. (Tr. 262). Dr. Cho found that Plaintiff's symptoms were attributable to a medically determinable impairment, that the severity of the symptoms was what was expected from such impairment, and that Plaintiff's statements were consistent with the medical evidence. (Tr. 264).

Medical records from East Dayton Health Center, dated November 14, 2007 to May 7, 2008, were submitted. (Tr. 360-365). Plaintiff was treated for neck, back, and knee problems. On exam, he had decreased range of motion of his cervical spine, positive Spurling, spasm, and decreased grip. (Tr. 271, 363-365). A November 29, 2007 cervical MRI demonstrated multilevel spondylosis, status post anterior cervical fusion, "…a diffuse disk bulge/protrusion with disk material…[with] partially effaced left epidural space with posterior element hypertrophic changes partially effacing the dorsal epidural space with a component of central stensosis…"at C4-5 and "…diffuse disk bulge partially effacing the ventral epidural space with mild bilateral neural foraminal narrowing" at C7-T1. (Tr. 273-74, 367-68). Plaintiff was treated with physical therapy in 2004 and 2005. (Tr. 295-315). Plaintiff was seen for an evaluation for physical therapy on October 4, 2007. He had weakness of the right upper extremity, very limited range of motion of his cervical spine, decreased range of motion of his trunk, and decreased range of motion of his right knee. (Tr. 319, 325-226). Treatment notes show a reduced range of motion. (Tr. 320-24).

Dr. Amongero, orthopedist, evaluated Plaintiff on January 22, 2008. He had not seen Plaintiff since June 2005. Plaintiff had done well after surgery, but had increasing neck pain and bilateral arm numbness and tingling. He had mild tenderness over his right paraspinal region on exam. (Tr. 385). The diagnosis was mild spondylosis and bilateral arm numbness, tingling, and pain. (*Id.*) Plaintiff was seen for additional physical therapy on January 28, 2008. He had muscle guarding, muscle tightness, decreased cervical range of motion, decreased right shoulder range of motion, positive right neural tension test, and poor rehabilitation potential. (Tr. 287-89, 292-93, 387). Plaintiff had an EMG on February 14, 2008, and it revealed bilateral carpal tunnel syndrome. (Tr. 386). On March 13, 2008, Dr. Amongero noted that Plaintiff had mild to moderate carpal tunnel syndrome. Physical therapy and traction had not helped his arms but had helped his neck pain. He was referred to Dr. Kim for evaluation of the carpal tunnel his shoulder. (Tr. 382).

On March 24, 2008, Dr. Kim reported that Plaintiff had a positive Tinel sign bilaterally at the carpal tunnel and positive carpal tunnel compression test and Phalen's test. He also had positive Tinel's sign at the fifth cubital tunnel. Dr. Kim noted that he had "tried NSAIDs, activity modification, and splinting, without any relief of symptomatology." (Tr. 383). He underwent a carpal tunnel injection. (*Id.*)

On April 24, 2008, Dr. Kim observed decreased range of cervical spine motion, positive ULTT1, and numbness of the bilateral hands. Plaintiff was to be seen for

-8-

physical therapy. The physical therapist also examined Plaintiff on April 24, 2008, and reported decreased range of motion, positive ULTT 1 and 4, positive finger extension test, and some decrease of strength. (Tr. 279). The diagnosis was bilateral carpal tunnel syndrome. (Tr. 280-81). Plaintiff failed to show up for the physical therapy appointments. (Tr. 282). On May 7, 2008, it was noted that Dr. Kim did not want to see Plaintiff as he did not have insurance and had a balance on his account. (Tr. 383). However, Dr. Kim did see Plaintiff again on June 9, 2008, July 7, 2008, and July 28, 2008, and gave him additional injections. On exams, Plaintiff had positive bilateral Tinel's sign at the carpal tunnel and positive carpal tunnel compression test and Phalen test. (Tr. 379-381). On July 28, 2008, Plaintiff reported that his last injection did not help him at all. (Tr. 379).

Dr. Bruce Kay, a pain management physician, saw Plaintiff on July 22, 2008. (Tr. 371). Plaintiff had a reduced range of motion of his neck and some crepitus of his right knee. (Tr. 371, 393). He had depression and anxiety. Blood work was positive for ethanol and cannabis. (Tr. 373-374, 394). On August 22, 2008, Dr. Kay reported that Plaintiff was doing well on the extra strength Vicodin. (Tr. 391).

A right carpal tunnel release was performed in August 2008. (Tr. 430-31, 434-35, 492, 494). Plaintiff was treated with vicodin for the pain. (Tr. 489-90). On November 12, 2008, Plaintiff reported that he had been active and that his pain in both hands was aggravated. On exam, he had tenderness of his scar on the right hand and positive Tinel sign, carpal tunnel compression test, and positive Phalen test on the left hand. He was

given an injection. (Tr. 489). On February 23, 2009, he had positive carpal tunnel compression test and Phalen test on the right and numbness, positive Tinel sign, positive carpal tunnel compression test, and positive Phalen test on the left. (Tr. 488). In March 2009, he underwent a left carpal tunnel release. (Tr. 421-22, 426, 480-82, 484). He was treated with vicodin for pain. (Tr. 478-79). He was doing well and released from care on April 27, 2009. (Tr. 478).

Plaintiff underwent a MRI of his right knee on February 26, 2009, which demonstrates a possible "ganglion cyst posterior to the proximal metaphysis of the right tibia…[and] a moderate knee joint effusion." (Tr. 499). He also had a lumbar spine MRI, which revealed a "[b]road-based central disc protrusion…at the L5-S1 level with asymmetric annulus bulging on the right at L4-L5" and mild to moderate lower facet arthritis. (Tr. 501).

Dr. Gomaa evaluated Plaintiff on January 24, 2009 at the request of Dr. Catanzarite. He was seen for neck, bilateral shoulder, bilateral upper extremity, right knee, and bilateral wrist pain. His gait was described a slow and stiff and had abnormal sensation, motor, and reflexes in the upper extremities; muscle spasm; multiple trigger points; reduced range of motion of the right arm; reduced range of motion of his cervical spine; and swelling of his right arm on exam. The diagnoses were chronic pain syndrome, displaced cervical disc, chronic cervical degenerative disc disease, myofacial pain syndrome, lumbar degenerative disc disease, and right knee derangement. Medication, physical therapy, electric stimulation, vasopneumatic treatment, therapeutic

massage and exercise, mechanical traction, education, and chiropractic evaluation and treatment were recommended. (Tr. 462-63). Plaintiff was restricted from carrying more than five pounds and intermittently no more than ten pounds, no pulling of more than ten pounds, no repetitive movements of his neck and upper back, no repetitive movements of his lower back, no twisting of his lower back over thirty degrees, no bending over forty five degrees, and no reaching over the head. He needed to frequently change positions. (Tr. 464).

On April 2, 2009, it was noted that Plaintiff's blood work was positive for cannabis abuse so no medication was prescribed. (Tr. 450). His MRI of the right knee and lumbar were abnormal and injections were recommended. His restrictions were still in effect. (Tr. 449). His examination had the same findings as the previous one. (Tr. 447-48). On April 23, 2009, his examination revealed the same abnormal findings as the previous ones. (Tr. 442-43). His restrictions remained the same. (Tr. 444).

On August 27, 2009, Dr. Amongero reported that he had treated Plaintiff for years. Plaintiff underwent an anterior cervical diskectomoy and fusion at C5-6 and C6-7 in November 2004, owing to right arm pain secondary to the disc herniations. By June 2005, Plaintiff had resumed his full activities. However, by January 22, 2008, he had returned with axial neck pain and some spondylosis above the fusion spot. An EMG showed carpal tunnel syndrome. No interventions were recommended for his cervical spine at the time.

On August 5, 2009, Dr. Catanzarite completed a Basic Medical form reporting that Plaintiff had left shoulder impingement. He was treated for neck pain caused by cervical disc disease, left shoulder pain, status post menisectomy right knee pain, status post cervical surgery, bilateral carpal tunnel release, and hypertension. (Tr. 528). She opined that his ability to stand, walk, and sit was affected and he was unemployable for twelve months or more. (Tr. 529). Treatment notes, dated August 5, 2009 through January 11, 2010, show that he had positive impingement signs on the left arm, decreased range of motion of his neck, and decreased range of motion bilateral shoulders. (Tr. 535, 537). He was treated with medications and injections. (Tr. 532-537).

**B.**

First, Plaintiff alleges that the ALJ erred in rejecting the opinion of his treating physician, not mentioning the opinion of his treating physician, and failing to give reasons for rejecting her opinion.

Greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id.* at 406 (citing § 404.1527(d)(2)).

-12-

In her decision, the ALJ found that "[t]he claimant's allegations of disability relies primarily on his testimony of pain, but disability requires more than just the inability to work without pain. An individual's allegations of pain do not alone establish disability; rather the medical record must present some objective medical evidence to support the subjective allegations." (Tr. 15). She then "noted that none of [Plaintiff's] treating physicians opined that [his] impairments prevented him from performing any work activity." (Tr. 16). However, on August 5, 2009, Dr. Catanzarite, Plaintiff's treating physician, completed a Basic Medical form where she opined that Plaintiff was unemployable for twelve months or more. (Tr. 529).[2]

In rendering her RFC finding, the ALJ stated, "[a]s for the opinion evidence, some weight is given to the opinion of the medical consultant for the State agency regarding the claimant's residual functional capacity (Exhibit 4F). However, evidence at the hearing level showed that the claimant was more limited than the consultant has assessed." (Tr. 16-17). She went on to state that "[t]his finding was made after examination of the claimant's medical records as a whole, consideration of the claimant's testimony, and consideration of the factors presented at 20 CFR §§ 404.1529 and Social Security Ruling

---

[2] Dr. Gomaa, Plaintiff's treating pain specialist, saw Plaintiff for neck, bilateral shoulder, bilaeral upper extremity, right knee, and bilateral wrist pain from January 19, 2009 through May 13, 2009. Based on his findings, Dr. Gomaa restricted Plaintiff from carrying more than five pounds and intermittently no more than ten pounds, no pulling of more than ten pounds, no repetitive movements of his neck and upper back, no repetitive movements of his lower back, no twisting of his lower back over thirty degrees, no bending over forty give degrees, and no reaching over the head. (Tr. 444, 449, 464). Yet, the ALJ never mentioned Dr. Gomaa's restrictions anywhere in her decision and gave no reason for rejecting them. Dr. Gomaa's restrictions certainly support the opinion of Dr. Catanzarite.

96-7p." However, there is no discussion as to how she came to her conclusions.[3] "In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation. It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985).

In this case, the ALJ gave no articulated reasons for crediting or rejecting the evidence she used in reaching her conclusion that Plaintiff could perform a reduced range of sedentary work activity. Instead, the ALJ erroneously substituted her opinion for that of a competent medical source. "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.2d 863, 870 (7th Cir. 2000).

If the ALJ determines that Dr. Catanzarite's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009).

---

[3] SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."

Even if Dr. Catanzarite's opinion was not entitled to controlling weight, it was entitled to deference. 20 C.F.R. § 404.1527(d)(2)(i). SSR 96-2p states:

> "Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."

The ALJ failed to address why Dr. Catanzarite's opinion should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2).

The Commissioner conceded that the ALJ's finding that "none of [Plaintiff's] treating physicians opined that claimant's impairments prevented him from performing any work activity" is false, as Dr. Catanzarite found Plaintiff to be disabled. In arguing for the ALJ, the Commissioner attempts to remedy the ALJ's decision by engaging in post hoc rationalization for the ALJ's omissions. "Courts are not at liberty to speculate on the basis of an administrative agency's order . . . The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 929 F.2d 361, 367 (6th Cir. 1991). Thus, the Commissioner's post hoc rationalization is not an acceptable substitute for the

ALJ's lack of rationale concerning her omission in considering the opinion of Plaintiff's treating physician. Since the ALJ did not even mention Dr. Cantanzarite's opinion in her decision, it fails the rationale requirement articulated by the *Blakely* Court. Specifically, the ALJ does not "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's [Dr. Catanzarite's] medical opinion and the reasons for that weight." *Blakely*, 581 F.3d at 406.

The Sixth Circuit has made it very clear that where the ALJ fails to give reasons for rejecting the treating physician's decision, the proper remedy is remand. Since the ALJ failed to give reasons for rejecting the opinion of Plaintiff's treating physician and failed to even mention that such an opinion existed, this case is remanded back to the Commissioner. Moreover, the ALJ erroneously substituted her opinion for that of a competent medical source and therefore the decision is not based on substantial evidence.

## C.

Next, Plaintiff maintains that the ALJ failed to properly assess his credibility.

The Sixth Circuit accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). It is not the province of the reviewing court to "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Accordingly, the Court declines to remand or reverse on the basis of Plaintiff's credibility.

### III.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Id.* at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

### IV.

Based upon the foregoing, the Court concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner to deny Clarence Smart benefits is **REVERSED**, and this matter is **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall: (1) reconsider Dr. Cantanzarite's findings as a treating physician, and address the requirements of 20 C.F.R. § 404.1527(d)(2) if rejecting such findings; (2) obtain testimony from a medical expert regarding Plaintiff's severe impairments; and (3) reassess Plaintiff's RFC.

**IT IS SO ORDERED.**

Date:  December 7, 2012                                              *s/ Timothy S. Black*
                                                                                             Timothy S. Black
                                                                                             United States District Judge